IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,** | CIVIL ACTION NO. 1:16-CV-1826 |
| | (Chief Judge Conner) |
| Plaintiff | |
| v. | |
| **NC OWNERS, LLC; NC RESIDUALS OWNERS TRUST; VCG SECURITIES, LLC; ODYSSEY EDUCATION RESOURCES, INC.; BOSTON PORTFOLIO ADVISORS, INC.; and COOK & SADORF,** | |
| Defendants | |

## MEMORANDUM

Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA") commenced this action against the collective defendants in the Commonwealth Court of Pennsylvania. Before the court is PHEAA's motion (Doc. 22) to remand pursuant to 28 U.S.C. § 1447(c). PHEAA maintains that it is an "arm of the state" rather than a citizen thereof, divesting this court of diversity jurisdiction. For the reasons that follow, the court will deny PHEAA's motion.

**I.  Factual Background & Procedural History**

PHEAA is a servicer of student loans established by and organized under the laws of the Commonwealth. See 24 Pa. Stat. & Cons. Stat. Ann. § 5101 et seq.; (see also Doc. 1 ¶ 4). On August 2, 2016, PHEAA filed a complaint in the Commonwealth Court of Pennsylvania. (Doc. 1 ¶ 1; Doc. 1-2 at 3-25). Therein, PHEAA advances state law claims for breach of contract, tortious interference with contract, and

fraudulent inducement against the collective defendants.[1]  (Doc. 1 ¶ 2; see also Doc. 1-2 at 3-25).  Defendants removed the case to this court pursuant to 28 U.S.C. § 1441 on September 2, 2016.  (Doc. 1).  Defendants assert that the parties are citizens of different states and that the amount in controversy exceeds $75,000, satisfying the *desiderata* for diversity jurisdiction under 28 U.S.C. § 1332(a).  (Id. ¶¶ 4-16).

PHEAA timely moved to remand.  (Doc. 22).  PHEAA submits that it is not a "citizen" of Pennsylvania as contemplated by the diversity jurisdiction statute but rather "an arm . . . of the Commonwealth," such that the court must remand for lack of jurisdiction.  (Id. ¶¶ 11-14).  PHEAA requests attorney fees and costs in connection with its motion pursuant to 28 U.S.C. § 1447(c).  (Id. ¶¶ 15-16).  The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court when the claims fall within the federal court's original jurisdiction.  See 28 U.S.C. § 1441(a).  A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court.  See id. § 1447(c).  Such motions may be filed at any time before final judgment is entered.  Id.  If the district court indeed lacks subject matter jurisdiction, it must remand to the state court

---

[1] Defendants are NC Owners, LLC, NC Residuals Owners Trust, VCG Securities, LLC, Odyssey Education Resources, Inc., Boston Portfolio Advisors, Inc., and Cook & Sadorf (collectively "defendants").  In their notice of removal, defendants contend that PHEAA has erroneously designated Odyssey Education Resources as a corporation rather than a limited liability company in its complaint.  (Doc. 1 at 1 n.1; see also Doc. 1-2 at 4 ¶ 5).  This dispute does not impact the court's jurisdictional assessment; under either designation, Odyssey Education Resources is a citizen of a state other than Pennsylvania.  We task the parties to meet and confer to resolve this dispute via joint stipulation.

from which the action was removed. Id. Statutes permitting removal "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

As the party asserting jurisdiction, defendants bear the burden of proving that the matter is properly before the federal court. See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted); Steel Valley Auth., 809 F.2d at 1010 (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985)). In order to invoke diversity jurisdiction, defendants must establish that the matter is between citizens of different states and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. See 28 U.S.C. § 1332(a).

## III. Discussion

The law is well-settled that an agency which is "a mere arm of the State" is not a "citizen" of that state for diversity jurisdiction purposes. See Moor v. Cty. of Alameda, 411 U.S. 693, 717-19 (1973). PHEAA attempts to invoke this principle in its instant motion to remand. (See Doc. 22). PHEAA contends that it is an arm of the Commonwealth of Pennsylvania and, *ipso jure*, cannot qualify as a "citizen" of the state. (Id. ¶¶ 11-12; Doc. 26 at 3-21).

Defendants rejoin that the doctrine of collateral estoppel, also known as issue preclusion, forestalls PHEAA's argument. (Doc. 30 at 4-14). Defendants aver that PHEAA has previously litigated and lost the arm-of-the-state argument raised *sub judice*. (Id.) This averment is correct. Federal courts have thrice rebuffed PHEAA's theory. *First*, in United States *ex rel.* Oberg v. PHEAA ("Oberg III"), the

Fourth Circuit Court of Appeals applied its Eleventh Amendment arm-of-the-state jurisprudence to assess PHEAA's status as an agent of the state under the False Claims Act, 31 U.S.C. § 3729.  See Oberg III, 804 F.3d 646, 650-77 (4th Cir. 2015), cert. denied, 137 S. Ct. 617 (2017).  Following exhaustive review of a massive factual record, the court held that PHEAA is an independent political subdivision, not an arm of the Commonwealth.  Id. at 677.  *Second*, in Pele v. PHEAA, the Fourth Circuit determined that Oberg III applies with equal force to the agency's claim to Eleventh Amendment immunity under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*  Pele, 628 F. App'x 870, 872 (4th Cir. 2015) (*per curiam*).  And *third*, in Lang v. PHEAA, our colleague, Judge John E. Jones III, concluded that Oberg III collaterally estops PHEAA from raising an arm-of-the-state immunity defense under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*  See Lang, 201 F. Supp. 3d 613, 620-28 (M.D. Pa. 2016).[2]

Defendants contend that this jurisprudential triptych precludes PHEAA's present argument in two ways.  Defendants first assert that Lang estops this court from revisiting the preclusive effect of Oberg III.  (See Doc. 30 at 7-8).  Defendants alternatively assert that Oberg III independently precludes PHEAA's jurisdictional

---

[2] The Fourth Circuit's decision in Pele relies exclusively on the court's reasoning in Oberg III, noting that procedural distinctions between the cases did not preclude extension of the core arm-of-the-state principle.  Pele, 628 F. App'x at 872 (citing Oberg III, 804 F.3d at 646).  The court released the two opinions on the same day.  Id.  Accordingly, our analysis herein refers primarily to the decisions in Oberg III and Lang.

challenge.³  (See id. at 9-14).  Assuming *arguendo* that the court declines to apply collateral estoppel, defendants separately maintain that PHEAA cannot establish itself as an arm of the Commonwealth.  (See id. at 14-24).  We begin by considering the preclusive effect of Lang itself.

The Third Circuit Court of Appeals applies the Restatement (Second) of Judgments to determine the preclusive effect of prior federal rulings.  See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 (3d Cir. 2002) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (AM. LAW INST. 1980)).  Per the Restatement: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  RESTATEMENT (SECOND) OF JUDGMENTS § 27.

Four factors are prerequisite to application of collateral estoppel: (1) the issue *sub judice* must be "the same" as that involved in the antecedent action; (2) the issue must have been "actually litigated" in that action; (3) the issue must have been resolved by a "valid and final judgment"; and (4) the issue must have been "essential" to that judgment.  Nat'l R.R. Passenger Corp., 288 F.3d at 525 (quoting Burlington N. R.R. Co. v. Hyundai Merchant Marine, 63 F.3d 1227, 1231-32 (3d Cir.

---

³ Defendants further aver that PHEAA has previously claimed to be a citizen of Pennsylvania for purposes of establishing diversity jurisdiction, and that PHEAA is judicially estopped from invoking the arm-of-the-state doctrine.  (See id. at 2-4, 14-24).  Judicial estoppel prevents litigants from assuming inconsistent positions in the same or different proceedings.  See *In re* Chambers Dev. Co., 148 F.3d 214, 229 (3d Cir. 1998) (quoting Ryan Operations, G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996)).  In light of our issue preclusion analysis, we need not address judicial estoppel.

1995)).  These factors, in combination, ensure that the party against whom estoppel is wielded has had a "full and fair" opportunity to litigate the issue.  See Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332, 328 (1979); Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 331, 333 (1971)).[4]  We evaluate the parties' arguments against this backdrop.

### A. Identity of Issues

The instant dispute, distilled to its *essentia*, rises and falls on the first factor: whether the issue litigated and resolved in Lang is the same as the issue at bar.  To avoid application of collateral estoppel, any disparity between applicable legal standards must be "substantial."  Raytech Corp., 54 F.3d at 191.  PHEAA remonstrate that the provenance and substance of this action differ in material respects from Lang.  PHEAA asserts, for example, that its status as defendant in Lang (and Oberg III) but as plaintiff in this case is a "substantial" distinction for estoppel purposes.  (Doc. 26 at 26; Doc. 32 at 16-18).  PHEAA also cites perceived asymmetries between the Third and Fourth Circuits' arm-of-the-state analyses, ostensibly oppugning Lang's finding of substantial similarity.  (Doc. 26 at 26-27).  PHEAA's arguments task this court to consider Lang *in extenso*.

---

[4] Even if all factors are satisfied, however, principles of equity counsel against application of collateral estoppel when "facts essential to the earlier litigated issue have changed."  Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995) (citing Montana v. United States, 440 U.S. 147 (1979)).  PHEAA does not argue that new factual information undermines the Lang or Oberg III analyses.

6

The Lang court began its analysis by identifying the Third and Fourth Circuits' respective arm-of-the-state jurisprudence. See Lang, 201 F. Supp. 3d at 621-24. The court recited elements of the Third Circuit's test as follows:

> (1) Whether the money that would pay the judgment would come from the state ([including] . . . whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);
>
> (2) The status of the agency under state law ([including] . . . how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and
>
> (3) What degree of autonomy the agency has.

Id. (quoting Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989)). Although the Third Circuit previously viewed impact on the state treasury as the "most important" consideration, see Fitchik, 873 F.3d at 659, the appellate court now ascribes equal weight to each prong. Lang, 201 F. Supp. 3d at 622 (quoting Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006)).

The Lang court also explored elements of the Fourth Circuit's non-exhaustive test as employed in Oberg III. Lang, 201 F. Supp. 3d at 622-23. The Fourth Circuit considers, *inter alia*:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;
>
> (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity,

> and whether the State retains a veto over the entity's actions;
>
> (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and
>
> (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

Oberg III, 804 F.3d at 650-51 (citation omitted). Under the first factor, courts in the Fourth Circuit evaluate both legal and practical effects of a prospective judgment on the state's treasury. Id. at 651 (citations omitted).

The Lang court thoroughly addressed many of PHEAA's instant cavils concerning perceived distinctions between the two tests. See Lang, 201 F. Supp. 3d at 622-24 (quoting Fitchik, 873 F.2d at 659; Oberg III, 804 F.3d at 650-51). For example, PHEAA asserts that the two circuits' tests are wholly disparate because the Fourth Circuit includes an additional factor, to wit: whether the state agency's activities concern state interests as opposed to local interests. (Doc. 26 at 26; Doc. 32 at 18). The Lang court rejected this argument, observing that the law of issue preclusion does not require "the exact same number of factors." Lang, 201 F. Supp. 3d at 623. The court carefully examined the letter and the spirit of each test and resolved that the Third and Fourth Circuits' analyses are "largely the same" in both substance and application. Id. The court also noted in *dicta* that the Fourth Circuit's additional factor did not upset the balance in favor of PHEAA in Oberg III. Id. at 624 (citing Oberg III, 804 F.3d at 676).

Lang also answers PHEAA's attempt to manufacture a substantive distinction from the circuits' respective assessments of agency status under state law. (Doc. 26 at 27). PHEAA asserts that the Third Circuit weighs four factors in assessing the agency's legal status—the law's treatment of the agency, the agency's independent corporate status *vel non*, its ability to sue or be sued in its own right, and its exposure or immunity to taxation—whereas the Fourth Circuit considers broadly "how the entity is treated under state law" and "whether [the agency's" relationship with the state is sufficiently close . . . ." (Doc. 26 at 27). Lang flatly rejected this contrived distinction. Lang, 201 F. Supp. 3d at 624. The Lang court traced the evolution of the Third Circuit's arm-of-the-state case law, from its retired nine-factor rubric to a three-factor test with multiple "sub-factors," and held that the appellate court intended the sub-factors to guide but not to whelm the primary, substantive inquiry. See id. Accordingly, the court found no meaningful difference between the Third and Fourth Circuits' standards concerning the status of the subject agency under state law. Id.

PHEAA maintains that the procedural posture of this case—with a state agency as plaintiff rather than defendant—sets the matter apart from Lang. (See Doc. 26 at 26; Doc. 32 at 16). Specifically, PHEAA contends that both Lang and its antecedent, Oberg III, gauged the Commonwealth's exposure to financial *liability* as opposed to *recovery*. (Doc. 32 at 16-17; see Doc. 26 at 26). PHEAA insists that "whether a recovery inures to the benefit of the state . . . was not part of the test before" either the Lang or the Oberg III court. (Doc. 32 at 1). The distinction, if indeed one exists, is without a difference. As Lang observed, both the Third and

Fourth Circuit analyze the "legal and practical/functional" impact of a prospective judgment on the state treasury. Lang, 201 F. Supp. 3d at 624 (citing Oberg III, 804 F.3d at 651-51; Fitchik, 873 F.2d at 659). That our case concerns PHEAA's potential recovery as opposed to liability is not a "substantial" difference sufficient to escape Lang's preclusive effect. See Raytech Corp., 54 F.3d at 191 (citation omitted).

Assuming *arguendo* that Lang did not squarely resolve this issue, Oberg III separately confutes PHEAA's argument. The Fourth Circuit measures financial effect of a prospective judgment on the state agency irrespective of legal posture. Oberg III, 745 F.3d at 149 (citation omitted). That is, the court examines "whether any judgment against the entity as defendant will be paid by the State *or* whether any recovery by the entity *as plaintiff* will inure to the benefit of the State." Id. (emphasis added) (citation omitted). This articulation confirms that an agency's precise role in the litigation is of no moment. Stated differently, the inquiry is whether, but not necessarily how, a financial judgment may impact the state's treasury.[5]

PHEAA lastly suggests that "broad[]" construction ascribed to cases brought under the False Claims Act—like Oberg III—is materially different from "strict[]" construction applied to the removal statute at issue here. (Doc. 26 at 27; Doc. 32 at 19). Nothing in Oberg III suggests that Congress's intent to "broaden the availability of the False Claims Act" influenced the court's separate and distinct arm-of-the-state analysis. See Harrison v. Westinghouse Savannah River Co., 176

---

[5] PHEAA's argument, taken to its logical conclusion, would permit a result *ad absurdum*, to wit: a finding that an agency is an arm of the state when suing, but not when sued. Our holding avoids this impracticable result.

10

F.3d 776, 784 (4th Cir. 1999) (citation omitted). In its *per curiam* opinion in Pele, a Fourth Circuit panel—comprising two of the three Oberg III jurists—held that its arm-of-the-state analysis applied with equal force to PHEAA in claims brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. PHEAA's conjecture concerning underlying standards of review is a red herring.

We have little difficulty concluding that this case involves precisely the same issue already settled by our colleague: whether Oberg III precludes PHEAA from revisiting its status as an arm of the Commonwealth. Lang, 201 F. Supp. 3d at 620. The court in Lang fully canvassed the Third and Fourth Circuits' arm-of-the-state analyses and squarely repudiated the arguments advanced by PHEAA herein. We find the *ratio decidendi* of Lang to be both comprehensive and persuasive. PHEAA's efforts to raise novel arguments *sub judice* to evade the preclusive scope of Lang are without merit. Hence, the first element of our analysis favors application of collateral estoppel.

**B.      Remaining Issue Preclusion Factors**

Before applying collateral estoppel, we must also determine whether the preclusive effect of Oberg III was "actually litigated" in Lang, whether the issue was resolved by a "valid and final judgment," and whether resolution of the issue was "essential" to that judgment. Nat'l R.R. Passenger Corp., 288 F.3d at 525 (quoting Burlington N. R.R. Co., 63 F.3d at 1231-32). The answer to each of these inquiries is "yes." The preclusive effect of Oberg III was the centerpiece of the Lang court's disquisition. PHEAA, through able counsel, vigorously advocated its cause. And resolution of the issue resulted in the denial of PHEAA's request for immunity

11

under the Eleventh Amendment.  See generally Lang, 201 F. Supp. 3d 613.  It is beyond peradventure that PHEAA has had a full and fair opportunity to litigate the preclusive effect of Oberg III.  We conclude that PHEAA is collaterally estopped by Lang from relitigating its status as an arm of the Commonwealth.

## IV. Conclusion

Defendants have established the elements of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Accordingly, we will deny PHEAA's motion (Doc. 22) to remand the instant matter to the Commonwealth Court of Pennsylvania for want of subject matter jurisdiction.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: June 9, 2017